Opinion of the Court.
ON the 7th of April 1784, James M’Connell, the ancestor of the defendants, executed to Henry Marshall, the ancestor of the complainants, a bond, conditioned to convey a described tract of 500 acres of land, in fee simple, to Marshall, his heirs, &c. as soon as a patent could be obtained therefor from the register’s office ; and containing the following clause: " Provided the said land is lost by prior rights, then the said M’Connell, his heirs, &c. shall make good the said land, equal to the value thereof, in the aforesaid county, to the said Marshall, his heirs, &c.”
A conveyance not having been made by M’Connell, according to the condition of his bond, suit was brought thereon, after his death, against his heirs ; but, under an agreement of compromise made between the heirs and Marshall, was ultimately dismissed.
In conformity to the compromise, and in consideration thereof, the heirs of M’Connell, on the 12th of September 1805, in pursuance of the bond of their ancestor, executed to Marshall a conveyance for the 500 acre tract of land; and by a clause of warranty contained in the deed, covenanted to warrant and defend the land against the claim of all persons whatever. And for the purpose of more effectually securing Marshall against loss from adverse claims, and in furtherance of the agreement of compromise, the heirs of M’Connell, on the same day of September 1805, mortgaged to Marshall another tract of land. This deed, after reciting the consideration on which it was made, *421 and after purporting to convey in fee simple the land therein described, to Marshall, contains the following clause: “ Provided always, that if the said heirs of M’Connell shall well and truly defend the title to a tract of five hundred acres of land in Mason county, on the east fork of Licking, two miles from the Blue-Licks, conveyed by them to the said Henry Marshall, by deed of even date with these presents ; or shall, in case he be legally evicted from the same, or any part thereof, well and truly pay to the said Henry Marshall, his heirs, &c. such compensation for costs and damages, as the said Henry shall be legally entitled to; that then, in that case and from thenceforth, this indenture, and every thing therein contained, shall cease, determine, and be utterly void and of no effect."
Subsequent to this, Marshall departed this life, and his heirs, asserting, under the entry of M’Connell, the superior equity to the 500 acre tract, conveyed to their ancestor by M’Connell, exhibited their bill in equity against several persons, who were in possession of the land, claiming adversely under grants of elder date than that of M’Connell. On a final hearing of this bill, the court, being of opinion that M’Connell’s entry was invalid, pronounced a decree against the heirs of Marshall, dismissing their bill with costs.
The heirs of Marshall then exhibited the present bill against the heirs of M’Connell, and others holding under them, for the purpose of obtaining compensation for the loss of the land, and to foreclose the equity of redemption in the mortgaged land, &c.
In the progress of the cause, the court below made an order directing a jury to be empannelled, to ascertain the value of the 500 acre tract of land, at the date of M’Connell’s bond to Marshall. A jury was accordingly empannelled, and found the value of the land, at that date, to be fifteen pounds per hundred acres; and on a final hearing the court pronounced a decree in favor of the complainants, for seventy-five pounds, the value of the land as ascertained by the jury, together with interest at the rate of five per centum per annum, from the 7th of April 1784, (the date of M’Connell’s bond,) until paid; and also decreed to the complainants $91 60 cents, the amount of costs expended by them in investigating the title of the land conveyed by the heirs of M’Connell; and order *422 ed, that unless the defendants should, against a day named, pay to the complainants the amount thereof, their equity of redemption in the mortgaged land should be forever barred and foreclosed, &c. From that decree the complainants have appealed to this court.
A grantee, by general warranty under a junior patent, may file a bill in chancery against those holding adverse interfering claims, without waiting the commencement of any suit at law by them, and a loss of the land in such suit, will entitle him to recover the value of the land from his warrantor.
In revising the decree of the court below, the main question presented for the consideration of this court, and that to which the attention of the court has been specially directed by the assignment of errors, involves an inquiry into the amount which should be recovered by the heirs of Marshall; whether it should be regulated by the value of the 500 acre tract of land at the date of M’Connell’s bond to Marshall, or by its value at the date of the conveyance by M’Connell’s heirs, or by its value at any other time?
1. In making this inquiry, we have been necessarily led to examine, whether or not the heirs of Marshall showed themselves entitled to any relief in the court below ; but after looking into the record, and carefully examining it, with that object in view, we are convinced of their right, and find that the cause must turn, in this court, on the solution of the inquiry raised by them here.
We are constrained, however, to differ in opinion from the court below, as to the amount which should he recovered by the heirs of Marshall. In forming this opinion, we have not found it necessary to give a construction to the bond executed by M’Connell in his lifetime, or to decide what damages might have been recovered in an action on that bond for a breach of its condition. We have not found it necessary, because the right of Marshall’s heirs to relief cannot be maintained on any thing contained in that bond, but must be deduced from the deeds of conveyance executed by the heirs of M’Connell after the decease of their ancestor. The object of the bond was to compel a conveyance, and to provide for compensation, in case the land was lost by prior rights, before a conveyance was made, or in case no conveyance was made. There had been a breach of the condition of the bond, and suit brought against the heirs for compensation. That suit was compromised by the heirs and Marshall, and in consideration of that compromise, a deed conveying the land with warranty, was executed by the heirs to *423 Marshall, and the deed of mortgage then executed to secure and indemnify Marshall against adverse claims.
A bond was executed in 1784, conditioned to convey 500 acres of land as soon as a patent should issue from the register’s office, containing a provision for the conveyance of other land equal in value, if that should be lost—held, that the object of the bond was to provide for the contingency of the land’s being lost before a deed of conveyance was executed, and did not extend to an eviction after the execution of a deed of conveyance with general warranty. In this case there was a breach of the condition of the bond, by failing to execute a deed of conveyance ; suit was brought, and in 1805, a compromise made, and a deed with general warranty executed—held, that the value of the land in 1805, with interest, &c. when the deed was executed, and not in 1784, was the measure of damages.
*423 2. The execution of these deeds by the heirs of M’Connell, and the receipt of them by Marshall, must, therefore, have extinguished all right in Marshall to proceed on the bond. The damages which might have been recovered in the suit brought for a breach of the condition of the bond, were satisfied by the deeds received by Marshall ; the office of the bond had become extinct, and no action could thereafter be maintained upon it.
In deciding on the amount which should be recovered by the heirs of Marshall, therefore, it cannot be important to go into an exposition of the condition of the bond ; but we must look to the covenants of warranty contained in the deeds of conveyance. It would, no doubt, have been competent for the parties, when the deeds were executed, by a clause to that effect, to have referred to the condition of the bond, and by adopting it as a part of the covenant of warranty contained in the deeds, made the stipulations in that condition control the recovery on the covenant of warranty. But this they have not done. The conveyance made for the land described in the bond, contains no allusion to the stipulations contained in the condition of the bond ; it has employed language of a different import, covenanting in general terms to warrant the title against all claims ; and having been made under a compromise of a difference which arose under the bond, it must be presumed that the parties intended thereafter to be governed by the import of the covenants contained in the deed, and not by those of the bond.
3. It is true, the mortgage contains a stipulation to pay such damages and costs, only, as Marshall should be legally entitled to, on his being evicted from the land conveyed by the heirs of M’Connell ; but as, from the mortgage, it appears the land described in the bond had previously, on the same day, been conveyed by the heirs, and as that deed of conveyance contains a covenant of general warranty, the expressions in the mortgage, “ shall legally be entitled to,” must be understood to refer to the damages and costs, which *424 Marshall might be legally entitled to recover for a breach of that covenant.
The value of the land at the time of the contract, with interest and costs, is the measure of damages ; the consideration paid for it, is evidence of that value.
Thus understanding the import and effect of those deeds, it follows, that the amount to be recovered by the heirs of Marshall, must be regulated by the value of the land at the date of the deeds, and not by its value when the bond was executed by M’Connell ; for it is incontrovertibly settled, by repeated decisions of this court, that the value of the land, at the date of the covenant of warranty, forms the criterion of damages to be recovered for a breach of the covenant.
We know it has been said, and no doubt said correctly, that the consideration given for land forms a proper inquiry, in actions founded on a breach of covenant of warranty. It is not, however, because the consideration in itself constitutes the measure of damages, that it is enquired into ; but it is resorted to as a mean to ascertain the value of the land. The value of the land at the date of the warranty, with interest, forms the measure of damages, and the consideration given for the land constitutes evidence of that value ; and where the amount of the consideration is definite and certain, it forms evidence of a very persuasive and satisfactory character, of the true value. It ought, perhaps, in such a case, to be conclusive on the parties; for, as it shows the value which the parties themselves put on the land ; if they should be concluded by it, they can have no just cause to complain. But where the consideration is not of that fixed and certain character, and consists, as in the present case, in the compromise of a contest between the parties, it can form no rational means of ascertaining the value of the land. The amount of such a consideration is itself uncertain ; it cannot be defined by any precise rule, and forms no legitimate inquiry in ascertaining the value of the land ; but the value of the land must, in such a case, be ascertained by the introduction of other evidence.
It results, therefore, that the decree of the court below must be reversed with costs; the cause must be remanded to that court, and after causing the value of the land at the date of the deeds, to be ascertained, a decree must be entered against such of the heirs as have executed those deeds, not inconsistent with this opinion.